Good morning, Mr. Chief Judge. May it please the Court, my name is Emily Skinner and I represent Richard Hurles. I would like to save five minutes for rebuttal. Mr. Hurles was sentenced to death by a judge who had become so enmeshed in the litigation against him that there was an unconstitutional risk of bias. In 2014, a panel of this Court remanded Mr. Hurles' judicial bias claim to the District Court for a hearing on the matter, finding that the tenor alone of Judge Hilliard's response to the special action strongly suggested that she should have recused herself from his trial and sentencing. The Court also listed a number of ways in which Mr. Hurles might demonstrate additional evidence of a risk of bias. What was the panel trying to decide there when they remanded? It seemed to me, now I'm just trying to make sure that I understand, you're really not suggesting that risk of actual bias and the appearance of bias are the same thing, are you? No. So it seems to me that then this panel was sending it back because they were worried about the appearance of bias and they wanted to have the District Court determine what to do on the appearance of bias. Would you agree? I think that the panel believed that there was an appearance of bias. Well, they thought there might be, but they didn't, they had a few facts to suggest it, but what they wanted is a hearing about that, right? Right. And because they wanted that hearing about appearance of bias, they were really saying, you know, should this judge have recused for this appearance of bias? Correct. And they sent it back for the District Judge to deal with that issue. That's correct. So went back to the District Court and the District Court said, based after a hearing, there is no appearance of bias problem. That's correct. What deference do I owe? The District Court's findings of fact are reviewed for clear error, so certainly this Court does have to give a significant deference to those findings. So if I give clear error to that finding, isn't that over, really? Well, I don't believe so. I mean, it seems to me that the District Court's findings of fact make it pretty difficult for me to suggest that then on an appearance of bias problem, we have a problem here. Ms. Skinner, did the prior panel actually send it back for determination of whether there was an appearance of bias? Well, they sent it back. I understand they sent it back to determine the facts and determine whether there was actual bias. The language that they used was to determine whether there was an unconstitutional risk of bias. They found that on the record before them, there was strong evidence that there was an unconstitutional risk of bias, but they were giving Mr. Hurrells an opportunity to develop additional evidence of that risk and that evidence that Judge Hilliard should have been recused. Well, I guess I'm not understanding about our conversation then. Are you suggesting that appearance of bias was not involved in that remand? Well, the language that they had... I mean, my worry about this is that if it were a risk of bias, I don't know whether there would have been any need for the remand at all. And yet they did remand. So it doesn't seem to me that that's really what they were worried about.  Sure. Well, if I can just quote the panel opinion itself, they found that although there was strong evidence, strongly, the response of pleading itself strongly suggested that the average judge in her position could not later preside over Hurrells' guilt-faced penalty trial and the post-conviction proceedings while holding the balance nice, clear, and true. And if they had stopped there and said, that's the end of it, you win. Sure. That would have been one thing, but then they remanded it. They did remand. So what do we do in reviewing the district court's findings? Because it appeared to me that the... Where's the clear error in the district court's findings? I think there's clear error in a number of the district court's findings, particularly in the question of whether Judge Hilliard was merely a nominal party or whether she was more than that participating in the special action proceedings. I think that if you look at the transcript from the evidentiary hearing, the evidence shows that she was more than a nominal party. But really, if we adopt that idea, aren't we just putting our idea of what the facts are in place of what the district court found? Because what you're doing is you're just saying, well, because of this part of the evidence, there's no way they could have got there, but because of this part of the evidence, they did get there. And it seems to me that your whole argument is I should reinstitute or put in the case my idea of the facts more than what the district court did, and I don't find that to be something to do unclearly erroneous. So I don't think that that's the case. I think if this court... The court can look to places in the testimony that the district court disregarded. There were internal inconsistencies with the testimony that he credited of Judge Hilliard and Colleen French, who was the assistant attorney general who represented Judge Hilliard in the special action. And some of the testimony was simply implausible. And... Why do you say that? So, for example, Judge — one of the findings of fact that the district court made was that Judge Hilliard was simply following protocol when she sought to have a response filed on her behalf in the special action. And that doesn't seem to be plausible for a number of reasons. One, the rules of the special action alone state that the judge is a nominal party and that responsive pleadings are to be filed by the real party in interest, which in this case was the State of Arizona, represented by the county attorney. Also... It was sort of a peculiar situation because the State didn't have standing to oppose the appointment of counsel, right? That's right. So, I mean, she testified, as I recall, that they had a procedure in her court where she turned over to the presiding judge and the presiding judge would send it to the State. Is there anything in the record that indicates that's not so? Yes. There was the — well, there was a couple of things. One, there was the testimony of Judge Fidel, and he was — his testimony was very But Judge Fidel was the judge who issued the opinion in the Hurls special action, and he was permitted to testify that in his 15 years as a judge on the Court of Appeals, this was the only case where he saw this happen, saw a judge file a substantive response in a special action. There was also the Hurls — the opinion itself in the Hurls special action, which said that the judge does not have standing. There's one other aspect of what happened. It seems pretty clear from the factual findings that you just alluded to that she well knew about the special action. Yes. And when it was completed, it was sent to her. That's true. Because it says who was served on it. But there's nothing to indicate, assuming that she was a true nominal defendant, that there was any affirmative action on her part to say don't file this or to repudiate it in some way. That's true. What does that go to, if anything? Well, I think it goes to the fact that she viewed this response as representing her position as the judge in the matter, which she testified to, that she viewed herself as a party, and the statements in this response represented her position as a party in the litigation. I thought she testified that she didn't recall reading the response. That's correct. That's what I thought she said. She testified that she did not recall reading it, but she also testified that the response represented her position as the judge on the case. She did testify that although she could not recall reading the briefing in the special action, she would have read the rulings from the court of appeals. And there was an order from the court of appeals, after her response was filed, ordering supplemental briefing on the standing issue. So at that point, she would have received an order from the court of appeals, you know, raising the issue that there was a question of her standing. But she didn't do anything after that, right? That's right. So the district court says French contacted the judge and put her on notice. The judge received a copy of the pleading and filed in her name. At no point did she take any steps to withdraw the response or correct the language. Even when the court requests briefing on the question, she remained silent. Isn't that what we have in front of us? Yes. And on that, I should decide the district court's decision is clearly erroneous? Yes. Well, did you have to go that far? Well. Doesn't that get you back to the appearance of impropriety? Sure. I mean, some of the findings of fact that the district court made, I think even if true, don't mean that there was not an unconstitutional risk of bias. So taking those facts, Judge Hilliard said she did not read the response. There was an order, you know, requiring supplemental briefing on whether she had standing. She read materials from the court of appeals, and then she never took any steps to disavow some of the troubling statements in that response. She never took any steps to suggest that this wasn't a response filed on her behalf. And, in fact, she testified in our hearing that the response represented her position as the judge. In light of all that, that, I think, does create an unconstitutional risk of bias. It doesn't measure the litigation. But I guess the problem comes, where you want me to get to, is you want me to say that the prior panel, on a risk of bias, risk of actual bias standard, decided they needed a hearing, which I don't know that they would have. So, first of all, I've got to say they didn't know that they didn't need a hearing on that. And then, when they get back there, then I've got to take all the facts and review them again de novo to come out where you want me to be. If I go back on the other hand, and this was really a remand for appearance of bias, then at that point, I've got to find a clearly erroneous finding by the court in order to get where you want me to be. Correct? Isn't what I've said exactly what your argument has to be in order for you to win? I have to, first of all, say the panel didn't know what they were doing in sending this back in the first place. And the second place is that now I can de novo look at these facts and do whatever I want to do. And then, on the other hand, it's an appearance of bias case, and judge, what they did was clearly erroneous, and so, therefore, you have to do this. Isn't that your argument? With all due respect, I don't think that that's my argument. Well, I don't know how to get there if it isn't, so help me. Well, my argument is that the 2014 panel sent the case back to the district court after finding there was at least a lot of evidence that there was an unconstitutional risk of bias, that the average judge sitting in Judge Hilliard's position would have recused herself. Well, but recused herself is not exactly that. When you go to recusal, you're now talking to me about appearance of bias. Well, okay, so what they said was that the average judge sitting in Judge Hilliard's position . . . Shouldn't have done it. Sure, shouldn't have done it. And it was a due process violation. That's right. That's what they should have said, but they didn't. They were talking about recusal. That's why I thought it was an appearance of bias case. Because when I get to Caperton, I've got the same thing in front of me, and that's an appearance of bias case. When I get to FTC versus Cement Institute, I have the same kind of a case. And, again, it's an appearance of bias case. In both of those kind of cases, they went back for hearings, and the court had to determine what to do. The Supreme Court was very clear in Caperton that there needed to be a fair trial, but that most matters relating to judicial disqualification do not rise to a constitutional level. So that's why I'm trying to juxtapose this right at you and let you explain, because I'm having a tough time getting where you're going, because it seems to me that my prior panel, in order for me to take your first approach that this is a risk of actual bias approach, I've got to say, they didn't know what the heck they were doing in sending this back. This is a question of law. And then the second case, it's an appearance of bias case. And then at that point, I've got to give some deference to the district court. And, therefore, I have to find a clearly erroneous decision. That's all I'm trying to get you to hit me with so I can get where you want to go. Okay. Well, certainly I wish that the 2014 panel, for our benefit today, had been a little bit more clear about what they were looking for. But it does look like they believed there was an appearance of bias, but that whether the average judge sitting in Judge Hilliard's position would have been able to hold the balance nice, clear, and true, required some additional factual development. And that was the reason for the hearing. Do you want to change to the ineffective assistance of counsel case, part of the case? If the court has no further questions on the judicial bias claim, then yes. Again, we look to the 2014 panel opinion, which remanded to the district court to address the ineffective assistance of appellate counsel claim. The court did not make clear the effectiveness of the appellate counsel claim. Let me ask you a question. Do you, on this challenge, are you challenging that the 2014 decision by the panel, that the IAC claim had been procedurally defaulted? Are you just saying that there's a way to get around the procedural default? The latter. It was procedurally defaulted. Okay. So we've got a procedural default. So our big question here is, then, does Davila change the circumstances? And as I briefed in my supplemental briefing, I think that Davila said that Martinez could not be used to excuse the procedural default of a defaulted IAC of appellate counsel claim because, you know, either the claim was raised in trial and so the trial judge reviewed it, or it wasn't raised at trial and so it would have been reviewed for fundamental error. I appreciate you want to parse Davila, but Davila's pretty straight, says, Coleman v. Thompson is supreme. Isn't that what it said? Yes. It said, we're going to make one limited exception with Martinez and no more. In fact, if I wanted to quote Justice Thomas's language, it seems as if he's saying, don't get outside of Martinez in their particular situation. Now, if one wants to go back to all the rest of the things he says, one can parse through it and come up with something, but it doesn't seem to me, after reading Davila, that there is any exception except Martinez. Now, if there isn't any exception except Martinez, then how do I distinguish our case of Hunt and Control? Hunt and Control, we had a case similar to this because it wasn't really about ineffective assistance of counsel for the trial counsel, but in that case it was about denied a petitioner's claim that Martinez permitted the resuscitation of procedurally defaulted Brady claim, holding that only the Supreme Court could expand the application of Martinez to other cases. So tell me, why isn't Hunt and then binding on me? Because what you're really trying to do is to, if you will, expand the application of Martinez to other cases, and I already have a case dead on from my court which says I shouldn't, so why am I not done? Let the Supreme Court do it if they want to, but at least for us, we're bound. Right, and I'm just asking this court to find a narrow exception. But again, why would I, what precedent would allow that given I've got Davila, which absolutely said there is no more exceptions, and then I have my court with Hunton that says we're not going to expand what the Supreme Court didn't if they want to, and Hunton was a pretty tough case about, if you will, a Brady claim and a procedurally defaulted Brady claim, and we said no, we're not going there, and so why don't I say in this case, no, we're not going there. If the Supreme Court wants to go there, based on the technicalities that are down there in Davila that you've certainly well argued, they can go, but not me. I'm going to stick with the holding that's pretty straightforward in Justice Thomas's language. And I certainly understand that position and respect the Court's position. I'm just simply asking the Court to find that there — Well, how do I go around Hunton? Well, I think by looking to Davila and looking at the reasoning for — We could have looked at Davila and Hunton, and we didn't. Well — Well, you're only concerned with ineffective assistance of counsel. Isn't that correct? That's right. That's all you're concerned about. But just a minute. You're really looking at a claim? It has nothing to do — it's ineffective of appellate counsel, sure, but we're looking at an ACCI claim. Now, that's Idaho way to say it, but we're looking at an ACCI claim. That's somewhat similar to a Brady claim. Same kind of stuff. Just you're going on a different counsel than what was involved, and that's what we did in Hunton. We said, no, let the Supreme Court do that. Martinez was concerned with ineffective assistance of trial counsel, right? That's correct. And that's really what it was about? That's right. And that's clearly what it's been limited to? It has been limited to that, yes. And we tried to extend it to — in Winn, we tried to extend it to ineffectiveness of appellate counsel. Sure. In Winn and then, of course, in the 2014 Hurl's opinion. I understand this is an uphill battle that I'm making. So confining your analysis to ineffective assistance of counsel and given Davila, what's — I don't quite understand how you would ask us to distinguish or do some workaround of Davila. My only — my only argument on Davila is that there — I'm arguing that there is a very narrow exception that Mr. Hurl's has met here, where he did — he did raise the claim in the trial court and the trial court did not rule because the court was — for this particular funding request, the court said she would not rule on an ex parte request. She ruled on other ex parte funding requests, both before and after, but for whatever reason, not this particular one. So why wasn't there a claim that there was ineffectiveness of trial counsel for not again resubmitting an application for funding? There definitely should have been that claim raised. Okay. I agree with — But even so, if you take — let's assume that it was a procedural denial because it was on an ex parte basis, but AKI or AKI, depending on how you pronounce it, said ex parte requests can be made. So why couldn't — I mean, it seems to me appellate counsel could have raised that issue directly. Appellate counsel could have raised the issue and should have raised the issue. Right. I mean, there's an additional potential ineffective assistance of counsel claim for not going back and filing the motion, which the judge basically invited. A further motion is serving the state, but AKI or AKI, it would seem to be pretty clear that you didn't require it, that there was error for the judge to say, I'm denying it because it's ex parte. Yes. And I've always said AK, and so now I'm questioning that I've been mispronouncing this name for years. Don't go back and listen to the table figure out. Frankly, don't take an eye to a pronunciation. They're always wrong. Is the — I say AKI. Is the AKI — I'm going to go with you just for consistency. The AKI claim was waived, right? It was waived by court counsel. And so, therefore, in order to even help you on this claim, I've got to find fundamental error, right? Well, my — so it was waived by appellate counsel. My argument is that it would not be subject to fundamental error review. Why? Because the trial court — the trial counsel did raise the issue. She raised the merits of the issue with the trial court, who unreasonably refused to rule on it because it was filed ex parte, despite ruling on other ex parte requests. But nonetheless, if appellate counsel isn't even going to put it in the brief, then it's waived. Then I've got to find a fundamental error on that counsel's conduct, haven't I? You have to find that appellate counsel was — well, there are several errors here, of course, because of the procedural defaults. Well, I mean, my worry is what my standard of review is for this particular decision, even if I get there. That's why I'm kind of pressing you. Because in my view, we've got a fundamental error standard of review. And therefore, I'm reviewing this under that standard. And I'm having a tough time understanding why it isn't that. And I would point the Court back to the 2014 panel opinion, where they did make a number of rulings on the — or a number of conclusions about this claim, including that Mr. Hurls had already demonstrated cause under the Martinez v. Ryan cause and prejudice analysis. But we're now seeing whether Davila understands and does that. That's true. That's true. But now, if I think that Davila doesn't understand it, and I now get to the issue, is it a fundamental error analysis that I give to this? That's my question. I don't think that we would be stuck — I'm having a tough time finding the case which would say it isn't. You got one. Give it to me. I don't have one at the tip of my fingers. Okay. Do you want to reserve? Yes, I do. Thank you. Clear from the State. Good morning, Your Honors. May it please the Court. Julie Doan, Assistant Attorney General for Arizona, representing Respondent Charles Ryan. And I can just ask this Court if they'd like to start with the last issue that you just ended with or with the judicial bias. You can start wherever you want. We'll cover them both. Okay. Well, I'll just pick up where we — where you just left off, then, on the — and I've always said Davila, so I guess I don't have anything right. Go for Davila. I don't have Aik or Davila right, I guess. Go for Davila. We'll go along. Our reading of Davila is that it is not contingent — the holding that it declined to extend the Martinez exception to ineffective assistance of appellate counsel is not contingent on whether the error was preserved at trial. So our reading of Davila is that you cannot use ineffective assistance of counsel any longer to excuse procedural default of claims so that this Court cannot hear the ineffective assistance of appellate counsel claim and underlying Aik claim. Well, one of the odd things about this case is — and underlying it all is a prior panel opinion, and to what extent law of the case either handcuffs us or guides us on this. So would you agree that their holding would stand unless Davila is clearly irreconcilable with that? Yes. Yes. Okay. I agree on the Miller v. Gamme case that says this panel is controlled by prior panels' rulings unless there's a higher authority that comes out. Yes. And that's consistent with our Jeffries case, which was a pure law of the case rather than a law of the circuit decision. So if Davila suggests that there might be an exception, doesn't that give our panel some freedom to say it's not clearly irreconcilable? If it does suggest that. Our reading, yes. But your reading is that it does not, and theirs is that it does. Yes. That there was nothing in Davila that suggested there was an exception. So they were pretty clear that, you know, going back and looking at Martinez, Martinez, the Supreme Court in Martinez, was pretty clear this is a narrow exception to ineffective assistance of trial counsel claims. And when you expand it to ineffective assistance of appellate counsel claims, you really just open it up to all sorts of claims because appellate counsel can raise underlying claims, like the aid claim, and not just trial counsel IAC claims. But it seemed to me in Davila that the Court may have allowed an opening when trial counsel had not preserved the issue. Would you agree with that? I would not, Your Honor. With all due respect, I don't think that there's – I think there's language in there when they're talking about the Petitioner's arguments. Yes. But I do not think that that's an exception that they looked at. What was the point of that discussion, if not to suggest that there might be another case where they would apply it? I think they were just talking about what Petitioner was arguing, which was he was making the same arguments in Davila that the Petitioner in Nguyen made. So that the – In Martinez. In Martinez made. Oh, no, I mean Nguyen in this Court. I understand. Yes. So, yes, we do not think that there is an exception or that the holding is contingent on whether a claim is preserved or not. Let me ask you a question. In the 2014 decision, did our panel ever find that post-conviction counsel was ineffective? No. My reading of the panel opinion was that they just found that appellate counsel was ineffective, deficient. They found deficient performance on appellate counsel's part. But not post-conviction counsel. No. No. And which was part of our argument in the district court when we briefed this issue was why else would they send it back for a hearing? So, other than to look at the appellate counsel IAC claim and post-conviction counsel's IAC. So, because our reading of the opinion was that they found deficient performance already of appellate counsel. I think this is pretty – at that point, if we're through Davila, you would suggest that, wouldn't you, that what the prior panel did is pretty binding on me as far as I now have to proceed with the claim because they've suggested that we now have gotten through the procedural bar? Well, I think you can look to the prior panel, but you also have to look to the district court's findings in this case. Now you've anticipated my question. So, we look at the prior panel, but now we look at the district court findings. So, what deference do I owe those findings? The same deference, I think, findings of – well, actually, because we didn't have a hearing. It would be just de novo review. Any finding is a fact based on the briefing. And the reason I say that is because until this went back to the district court, we had never had an opportunity to actually brief the AIC claim itself because we had always argued that it was procedurally defaulted. The district court found that it was procedurally defaulted. So there was never any merits briefing on the AIC claim itself. So the district court had the benefit of the briefing on that actual claim from both parties. And as I was preparing for argument, I went back and read the trial record in anticipation of the AIC claim, if this Court doesn't find that Davila – that Davila has an exception. And I just wanted to raise a couple of points on that. The CTM report that they say was improperly precluded by the trial court and that that was an AIC violation, I think – It wouldn't provide funding for it. It wouldn't provide funding for it. Correct. I think after reviewing the record, our argument is even stronger that it's not an AIC violation. First of all, the CTM report specifically says that the studies supplement and don't replace clinical judgments. And all the CTM report did was find subtle, nonspecific abnormalities in the left frontal area. And that's ER 868. Dr. Walter testified during the guilt phase about whether or not Mr. Hurls was insane at the time of the crime. All the CTM report would have done was confirmed the brain damage finding that Dr. Walter was insane, whether or not he was psychotic at the time of the crime. Brain damage does not automatically equal insanity or psychotic behavior. You needed Dr. Walter to explain that. So all the CTM report would have done was just confirmed his conclusion that he had mild brain damage. I thought the State took the position that they needed that CTM report. No. It was – both experts agreed that it might confirm whether or not there was brain damage. But the – No, but this – in terms of cross-examination of Dr. Walter, the State was pretty hard on him for not conducting the test. That was sort of – that was their primary argument, that you needed clinical findings with the test. Well, and I actually wanted to clarify our argument on that. It's that ER 627 is the transcript of a cross-examination of Dr. Walter. And the prosecutor asks, to really determine if Hurls has brain damage, don't you need to do further neurological studies? That was the prosecutor's question. There was no argument by the prosecutor as suggested by Hurls. And then Walter testified, not necessarily, but getting a PET scan or a brain wave mapping would be informative. So it was Dr. Walter who brought up the idea of the PET scan or the brain wave mapping. And – In response to cross-examination? Right. Asking whether or not there was further neurological studies that would show that. Yeah. Which could have been just further testing by – like Dr. Walter did. And the State's expert, Dr. Don, agreed throughout his testimony, if you look at ER 479 and 526 to 527, he agreed that Hurls was suffering from a psychiatric illness at the time of the crime and that he probably had or possibly had mild brain damage, but found that there was no indication that mental illness would have interfered with his ability to know what he was doing or that it was wrong, that he was not insane at the time of the crime. And the panel opinion in 2014, when they wanted a hearing on this, they said the reason why there was an egg claim is because there was this battle of the experts, and so he should have been given this other expert to kind of break that tie. But this other expert would not have broken the tie. There was really no dispute about whether he had mild brain damage. The dispute was whether or not he was insane at the time of the crime. And the CTM report speaks nothing to that. All it does is say he had minor – make sure I get the language right – he had subtle, nonspecific abnormalities in the left frontal area. It says nothing about insanity or whether he was insane at the time of the crime. So it aches as you get one competent psychiatrist or expert. He had that with Dr. Walter, who testified about whether he was insane at the time of the crime. And Dr. Don, the expert who testified for the State, said by all indications he was not. The CTM report had nothing to do with whether he was insane or not and would not have broken a tie. So there was no ache violation by not – he had the best expert testify when Dr. Walter testified. And all that information was in front of the 2014 panel. Yes. So where does that leave us? Oh, sorry. I didn't mean to interrupt you. Where does that leave us in terms of all the case? You're arguing with their decision. Well, the problem, like I said before, with the 2014 panel is we had never had an opportunity to brief this until we got back to the district court, because we'd always said it was procedurally defaulted. So we were never able to brief this. So they didn't have our argument and our briefing before them when they made their ruling in 2014. So their rulings were without anything from us. Yeah, I understand. Do you want to turn to judicial bias? Sure. And if there's any questions that the Court has right from the start, I can address those. As far as the Court's questions regarding appearance of bias versus actual bias, yeah, our reading of it, and we all struggled reading exactly what they were sending it back for, even the district court concedes that, was that they don't have to prove actual bias, just an intolerable risk of bias or the appearance of bias. If based on the facts that they had before them, they were going to find an appearance of bias, there would have been no need for a remand hearing. Yes. It's an odd situation we find ourselves in. I mean, the difficulty, of course, is Arizona had judge sentencing. And here in a pleading filed on behalf of the judge, there's a description of the crime as brutal, saying this is an easy case, evidence is overwhelming. Standing alone, if the judge had filed, actually authored it, I think that would be sufficient, wouldn't you, to say that the judge shouldn't have been presiding at least over the sentencing phase? I don't necessarily agree with that, because everybody You say before even trial, this is an easy capital case, the evidence is overwhelming, the crime is brutal? Well, I don't think they said it was simple and straightforward just based on the So I don't know how she could have authored that. Right. No, I'm just saying, if she had, if she'd typed it out herself, forgetting the state submission, that would be enough to show risk of bias, wouldn't it? It would be a lot closer, but I still think it wouldn't necessarily be enough. I've made up my mind this is a brutal crime, the case is really easy, the evidence is overwhelming, before trial? I think So, I mean, to me the question is then, how do we sort out all of this? Because she doesn't remember, the state files it on her behalf, she says this is the procedure that was followed, the court of appeals seems to say it was submitted by the presiding judge, and then they say you shouldn't have filed it, this is improper. It's hard to know what to make out of all that. Well, I think it's a lot easier now that you have had the hearing and the district court's findings, which, as this Court's aware, you have to look at for clear error. And whenever there is two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous. That's what this Court found in United States v. Working in 2002. So there, it has to be more than just, you know, some inconsistencies or discrepancies between their testimony. And the district court had the benefit of hearing the witnesses, so you have to give deference to its credibility. If I might interrupt you. Sure. I think if we're looking at actual bias, that's certainly true, but how do you defer to somebody on a question of appearance? I mean, appearance is appearance, right? Yeah, but you also have to look at, which I think Hurls is looking at this in a vacuum, and I think they're ignoring a lot of the findings of fact that were made by the district court. And the In re. Murchison case specifically says you have to consider the case's particular circumstances and relationships, which is what this the district court did during the hearing, is looked at all the circumstances and relationships and took all that testimony, and that's how he came to his conclusions, based on Judge Hilliard's testimony and Commissioner French's testimony, that Judge Hilliard never had any input into the special action. That was made pretty clear at the hearing. And she remembers that, as far as that goes. She doesn't remember being called by Colleen French, but Colleen French said it was a de minimis contact. I called her and said we were going to be filing this response. She said, I don't want to have anything to do with it, is basically her response. That, to me, shows the lack of an answer. Well, she said she was uncooperative. She didn't say she didn't want to have anything to do with it. Well, the gist of it, if you reread the hearing transcript. Yeah, I've read it. Yes, is that she didn't want to have anything to do with it, which in our position shows the opposite, the absence of bias, rather than appearance of bias. And she didn't read the special action. Well, she said she didn't recall reading it. Mm-hmm. She didn't say she didn't read it. Well, she said she generally didn't read them, because her calendar was pretty busy. So, but she specifically. I mean, I have to say, if you know something's being filed on your behalf and you're a judge and you don't read it, that's a little odd. I think it shows, again, the absence of bias. She didn't want to have anything to do with it. Why didn't she speak up? I think. Why didn't she speak up and say, don't file that? I think. This is going to cause this is going to have to require me to disqualify myself if you file that. I think that could have been as big of a concern about the appearance of bias by injecting her objection into it. Why do you say that in light of the Arizona Court of Appeals' decision, which said she shouldn't have been involved, period? Well, and I think the Court of Appeals' opinion was specific to this case to make sure in the future judges knew or the trial judges knew, don't file a response you don't have standing to file a response. So, because before that, as the district court found, the law was unclear on that issue, whether or not they could actually take a position. But the hearing, it was. Right. But you're, what you could have said is, look, there's a risk of bias in this case and I don't want you to file anything. And your response to me was, if I heard you correctly, that would indicate bias. It could. Why? It could. When we know now it's improper for, I mean, her answer is, I don't want to inject myself. I don't, I can, they can defend, you can defend my decision, but I don't want to have any part of being a party. Well, because then it could have been turned into, look, you've now had substantial contact with this judge when you were preparing the response. Yes, she indicated to you she objected to the response. To me, that's the same as her saying, basically, I wasn't cooperative. So whether it's an objection or just being not cooperative, it was clear she didn't want to have anything to do with the case. But going further than that, objecting. I think, I think she said she didn't remember. She never said I didn't want to have anything to do with it. She just said I didn't have any recollection. No. And Ms. French said she was uncooperative. Yes. Isn't that the state of the record? Yes. That's Commissioner French's testimony. Exactly. So, was that she was uncooperative. So, but based on the interview we had with Commissioner French before the district court, that was just our reading of, and our reading also of the district court's factual findings. So basically, she was hands off. I don't want to have anything to do with this. So, but, I mean, it was made clear at the hearing that she had no input, that the fact that the crime was brutal, described as brutal, cannot be attributable to Judge Hilliard. That language came from Commissioner French's discussions with the prosecutor. And the fact that the evidence was simple and straightforward came. Now, the only problem is it was filed in her name. Yes, but. And attributed to her. I mean, that's why it's a curious case. It is, but I think if you. Can you tell me what the procedure is now? I mean, I'm at sort of a loss. If this happened today in Arizona, would the state intervene or not? Would it be an ex parte proceeding? I couldn't answer that. I apologize. So we. Because the State was deemed to be not have standing, and that she was deemed not to have standing. Well, I think it was because the, as the court of appeals opinion explained, the way she was. If she had been defending an administrative policy, then they said, yeah, you can come forward. But if it's the I ruled correctly kind of response, then no, you don't have standing to come. Not that this was. Yes. Yeah. And that's why they didn't take jurisdiction of the special action also, is they just wanted to issue an opinion on that issue. But they found that she still hadn't made a particular showing that she needed second chair counsel. So they didn't even take it past that. So the actual underlying issue of the special action was not even before the Court or ruled on by the Court. Excuse me. So. But we think it's pretty clear from the hearing, which, you know, you have to find clear error in the district court's factual findings and give deference to its credibility findings, that she had no input. She didn't authorize it. Just specifically following procedures, sending it over to the criminal presiding judge, we would not we don't think that's authorizing it, soliciting it, commissioning it. The language that was used that the 2014 panel was concerned about, they talked about the tenor and language used in it. That is not hers. I mean, you could argue it's attributable by her because the name that it was filed in. Yeah. So that's where we get down to risk. Exactly. But once you look at the particular circumstances and relationship in this situation, which you have to under the Murchison case, you can see past that, that it didn't come from her. So there's — if you look at it with all that information and not just in a vacuum, you cannot find an appearance of bias. And how were — how would Mr. Hurrell's attorneys at the time have known that? I'm sorry? How would they have known that? In other words, what they see is they file a special action, and in the name of the judge who's going to be doing the sentencing comes this pleading. They wouldn't have known that it was not her that authorized it, right? Yeah, but if they were so — No, no, just a second. Sorry. Sorry, I didn't hear you. And so the only way they would have found out, they would have found out there had been an ex parte contact between the prosecutor and the judge pretrial, right? Well, they could have filed a motion to recuse just based on that, if they thought that they were — If they knew, but they didn't. Well, they got copies of the response. I mean, I'm talking about the ex parte communication. No, but if they were concerned about judicial bias, just based on the face of the response to the special action being filed, they could have filed a motion to recuse. The fact that they have never raised this issue until the success of PCR, eight years after that he went through trial, sentencing, direct appeal, and first PCR, shows there really wasn't a concern of an appearance of bias. But there was an effective assistance of counsel. Through trial counsel, direct appeal counsel, post-conviction counsel. I mean, I think you're getting further and further away from — so, and like I said, once you look at all the evidence that was presented to the district court, who had heard all this evidence, I just don't see how you can find an appearance of bias in this case, considering all the evidence, and not just looking at it in a vacuum at the response. So, which is what I think the panel sent it back for. Yes, so we would just argue that her non-participation in the special action shows an absence of bias, and taking no steps is just part of that, to object to it, is part of that non-participation. Determination of appearance of bias, is that a factual determination, or is it a legal conclusion based upon the facts? I think it's a combination of both. So, based on — I know I keep saying this, but the Enri Murchison case that says you have to consider the case's particular circumstances and relationships. So, I think it's a combination of both. But I mean also — But it's really an application of the same law to the facts as determined by the court who is applying it, correct? Correct. And if it comes to us, it's really us applying the law that should be applied. If the district court applied the wrong law, then at that point you've got to change the law that's applied. But nonetheless, taking the same facts, unless they're clearly erroneous, correct? Correct. Correct. And the other thing I just want to remind this Court, which I know it's aware of, is that this isn't just an appearance of bias. This has to be a due process, unconstitutional risk of bias or appearance of bias, which is a pretty high standard. But that's the question. Did the other panel find it to be the constitutional due process violation? I think they said, based on what we have before us, there's a suggestion of that, but we need more evidence. And that's why they sent it back for a hearing. So, on that issue, if we were looking at risk, the constitutional due process violation, do I owe any deference to the district court? And not to — Is there factual determinations? Yes. I think you have to give deference to those factual findings, because those had never been before a court. I mean, that was — part of what they were saying is that they had a problem with the 2002 PCR ruling, post-conviction ruling by Judge Hilliard, saying it had never been tested. Her memory had never been tested, and she was making these conclusions. This hearing gave Mr. Hurrells the opportunity to test those conclusions that she'd made in her PCR ruling, and they were confirmed at the district court hearing. That I wasn't biased. Well, and that she had no input and did not solicit or authorize the response. So she confirmed both those things at the district court. So he's now been able to test those, cross-examine Judge Hilliard on those, and that's what it's come to. And the Supreme Court's recognized only a few circumstances, which — But her testimony was a bit at odds with her ruling. I'm sorry? Her testimony was a bit at odds with her ruling because she said, as I understand, if I recall correctly, that she solicited through the presiding judge. She turned it over to the presiding judge to determine whether or not to go into the filing. And she might have read it. She didn't recall the phone conversation. And essentially, in her ruling, she said she had absolutely nothing to do with it, which was not entirely true. Well, I would disagree as far as I don't think she ever testified she solicited it. She said she — No, she said she sent it to the — she said our procedure was that you turn these things over to the presiding judge, and the presiding judge then contacts the state. And the court of appeals noted that in a footnote. Yes. So the fact that she said, I had no contact at all, was untrue. Yeah. But the — as was proven at the hearing, any contact that was had was incidental or de minimis. I mean, it was — and it was French calling. So I just don't think you can, you know, attribute that to Judge Hilliard, that she had contact, this substantive contact, ex parte communications, when it was her saying, I, you know, am not cooperating with this. So — but as I was saying, the Supreme Court's recognized only a few circumstances which an appearance of bias necessitates recusal to ensure due process of law. We just don't think the facts here give rise to that. Okay. Thank you. Thank you. Rebuttal. Thank you. Just to address a few points made by counsel, she mentioned that some of the more troubling statements in the response, including that this was a simple case and the facts were brutal, came from Colleen French's conversations with the county attorney. And to me, that's significant because it shows that Judge Hilliard adopted the position of the prosecutor in this case before she had heard the evidence. So the county attorney did not have standing to file a response, but instead worked with the attorney general to file a — to discuss the facts that were used to file the response on behalf of the judge. So the judge adopted the prosecutor's position. Counsel also mentioned that trial counsel did not file a motion to recuse Judge Hilliard, and that's true, and certainly there might be, you know, issues there. But the response to the special action also suggested that defense counsel may not be competent to receive capital case appointments anymore, and so that likely had a significant impact at Mr. Hurrell's trial and sentencing. Another thing I want to point this Court to in the evidentiary hearing transcript is ER 173, Judge Hilliard testified, I'm hard-pressed to find a situation where filing a response would be unethical. So Judge Hilliard simply didn't seem to view it as a problem that she had placed herself in the position, or at least accepted herself as being placed in a position of litigating against a capital defendant before her. In light of her role presiding over the trial and being the sole person responsible for sentencing Mr. Hurrell to death, we would ask this Court to find that there was an unconstitutional risk of bias and grant the writ of habeas corpus. Okay. Thank you. The case has started. You'll be submitted for decision. Thank you both for your arguments and for traveling to San Francisco for them. And we will be in recess.
judges: Thomas, Paez, N.R. Smith